UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| MIKE H.,[1] | ) | No. 18 CV 50162 |
| on behalf of Mary H., | ) | |
| | ) | Magistrate Judge Iain D. Johnston |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW SAUL,[2] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mike H., on behalf of his wife and original claimant, Mary H.,[3] brings this action under 42 U.S.C. § 405(g) seeking remand of the decision denying his wife's social security benefits. For the reasons below, the Plaintiff's motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

**I. BACKGROUND**

Claimant filed for disability benefits on November 5, 2014. She alleged a February 1, 2006 disability onset date caused by cervical spondylosis with myelopathy, coronary artery disease, and hyponatremia. R. 20, 213. She stopped working because of her impairments on February 15, 2006. R. 213. Claimant's date last insured is December 31, 2011. R. 22. On February 10, 2017, Claimant, represented by counsel,[4] appeared for a hearing before an

---

[1] Plaintiff's last name has been redacted in accordance with Internal Operating Procedure 22.
[2] As of June 17, 2019, Andrew M. Saul is the new Commissioner of Social Security. Mr. Saul is substituted for Nancy A. Berryhill as defendant pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g).
[3] Mary H., the original claimant, passed away on January 8, 2018. *See* Dkt. 1 at 4. Throughout the opinion, the Court will refer to her as "Claimant."
[4] Plaintiff's counsel in this appeal represented Plaintiff at the hearing before the ALJ. R. 20.

Administrative Law Judge ("ALJ"). At the hearing, she testified about her work history and various impairments, including difficulty raising her right arm; difficulty manipulating three fingers on her left hand; and lower back and right leg pain. R. 46–57. Mary's husband (and now Plaintiff) Mike H. also testified regarding the effect of Mary's impairments on her functioning. R. 61–66.

An impartial medical expert (ME), Dr. Ashok Jilhewar, also testified at the hearing.[5] R. 69. Along with discussing impairments not relevant to this appeal, the ME discussed the record evidence regarding the Claimant's left hand. R. 69–82. He testified that after cervical spine surgery in March 2006 and subsequent physical therapy, Claimant's left hand was improving. Additionally, by July 2006, her extensor was working well, and she could fully stretch her pinky finger on her left hand; therefore, the ME testified that these and other functional improvements indicated that Claimant did not have a "claw" left hand following her March 2006 surgery. R. 71–72, 76.

After the hearing, the ALJ followed the five-step evaluation process set forth by the Social Security Administration 20 C.F.R. § 404.1520(a)(4) and found that the Claimant was not disabled. R. 20, 33. The ALJ specifically found the following: (1) at Step One, that Claimant had not engaged in any substantial gainful activity between her onset date of February 1, 2006 through December 31, 2011, her date last insured, R. 22; (2) at Step Two, that Claimant had "the following severe impairments: moderately severe cervical facet joint arthritis at multiple levels without central canal stenosis, cervical radiculitis with some neurologic deficit, C8-T1 radiculopathy, and status post March 2006 fusion surgery" during the relevant insured period, R. 23; (3) at Step Three, that Claimant did not have an impairment or combination of impairments

---

[5] The ALJ gave the ME's opinion "great weight" in his final decision. R. 29.

that met or equaled any listed impairment, *Id*.; (4) Claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(h) except that she could only occasionally lift and carry 10 pounds and frequently lift and carry 5 with the upper-left extremity, could "frequently stoop, crouch, crawl, kneel, and balance," and occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. R. 24. The ALJ also found the Claimant was "restricted from working at unprotected heights, working near heavy equipment, or operating machinery" but could "frequently reach, handle, and finger with her bilateral upper extremities," *id*.; and (5) at Step Four, the ALJ found that Claimant could perform her past relevant work as an accounting clerk.[6] R. 32.

## II. STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner [], with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). The Commissioner's denial of disability is conclusive when supported by substantial evidence. *Id*.; *Skinner v. Astrue*, 487 F.3d 836, 841 (7th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399–400 (1971). The court may not displace the ALJ's judgment by reconsidering facts and evidence, reweighing evidence, or by making independent credibility determinations. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Similarly, even if reasonable minds could differ on whether a claimant is disabled, a reviewing court must affirm the ALJ's decision if it is adequately supported. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009).

---

[6] DOT 216.482-010.

However, review of an ALJ's decision is not a rubber stamp of approval. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) ("mere scintilla" not substantial evidence). The court must critically review the ALJ's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). The ALJ's conclusion will not be affirmed where he fails to build a logical bridge between the evidence and his conclusion, even if evidence exists in the record to support that conclusion. *Berger v. Astrue*, 516 F. 3d 539, 544 (7th Cir. 2008); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (where opinion is "so poorly articulated as to prevent meaningful review" the case must be remanded). Additionally, courts may not build a logical bridge for the ALJ. *Mason v. Colvin*, 13 CV 2993, 2014 U.S. Dist. LEXIS 152938, at *19–20 (N.D. Ill. Oct. 29, 2014).

### III. ANALYSIS

Plaintiff argues that the ALJ ignored evidence that Claimant's left hand became worse, not better, after surgery, and as a result erroneously concluded at Step Four that she could perform her past relevant work. Specifically, Plaintiff points to a neurosurgery evaluation from 2008 by Dr. Sean A. Salehi, in which he indicates that Claimant complained of "left hand weakness and numbness in her fourth and fifth digits in her left hand" and that her left-hand weakness "has not responded to therapy." R. 694. Upon Claimant's examination, Dr. Salehi indicated normal upper extremity strength "except in the left hand which is significantly diminished on wrist extension and finger abduction" before recommending surgery. R. 696. Plaintiff argues that based on Dr. Salehi's 2008 report, and contrary to the ME's opinion that Claimant's left hand improved after her March 2006 surgery, Claimant's left hand had gotten *worse* after surgery and subsequent physical therapy. Therefore, Plaintiff argues the ALJ erred

4

by relying on the ME's flawed testimony regarding improvements to Claimant's left hand when making his Step Four determination.

Plaintiff also points out that the ALJ relied on the ME's testimony that the Claimant "had virtually no restrictions on reaching, handling, and fingering, except she was limited to constant as opposed to frequent use." Dkt. 13 at 6. In formulating his opinion, the ME relied in part on spine surgeon Dr. J. Scott Smith's post-surgery treatment note from July 19, 2006, that Claimant's fingers in her left hand were working well. *See* R. 26, 70–71. However, Plaintiff argues that this treatment note "does not appear in the file, based on a diligent search by counsel." Dkt. 13 at 6. Thus, Plaintiff contends the ALJ failed to account for the 2008 post-surgery report which rebuts the ME's testimony regarding her left hand, the ME otherwise relied on a treatment note that doesn't exist in the record, and use of the left hand directly effects Claimant's ability to perform her past relevant work; therefore, the ALJ erred by mischaracterizing and cherry-picking the administrative record to support his decision at Step Four. *See Punzio v. Astrue*, 630 F.3d 710, 711 (7th Cir. 2011); *Steele*, 290 F.3d at 940–41; Dkt. 13 at 6.

However, Plaintiff identifies no error warranting remand because these arguments suffer from the same problem: Plaintiff's misreading of the record. First, Dr. Salehi's report, which Plaintiff states was made in 2008, is in fact dated January 26, 2006. R. 694.[7] Thus, Dr. Salehi's report identifying Claimant's left-hand issues and recommending surgery came approximately one month *before* her March 2006 surgery and has no bearing on the ME's opinion that

---

[7] Though the date on the report is somewhat difficult to read, Plaintiff's birth date and her age at the time were also included in the report, R. 694–95, thus removing all doubt from the conclusion that it was made in January 2006 rather than sometime in 2008. Regardless, Plaintiff did not realize this fact until the Commissioner pointed it out in its response brief.

5

Plaintiff's left-hand condition improved *after* her March 2006 surgery. The ALJ did not address Dr. Salehi's 2008 report as described by Plaintiff because no such report exists in the record.

Second, Dr. Smith's July 19, 2006 post-surgery treatment note, which Plaintiff argues "does not appear in the file, based on a diligent search by counsel," can be found on page 698 of the administrative record.[8] Indeed, the treatment note indicates that several months after surgery, Claimant was "doing very well," her triceps strength had almost returned to normal, and despite some weakness in the third and fourth digits of her left hand, her "extensor digiti minimi" was "working well and she [had] made quite a bit of progress." R. 698. Thus, contrary to Plaintiff's argument, the treatment note does exist in the record and it substantially supports the ME's contention and the ALJ's finding that Claimant's left-hand condition improved after the March 2006 surgery.

Aside from these two evidentiary arguments, Plaintiff argues that "a favorable, lesser standard of disability also applied to Mary's claim because of her age and work history," Dkt. 13 at 4. Plaintiff contends that, had the ALJ limited Claimant's left hand to "occasional" reaching, handling, and fingering, and then found Claimant unable to perform her past relevant work at Step Four, Claimant would have been found presumptively disabled under the Medical-Vocational Grid Rule 201.14 at Step Five. *Id*. at 4–5.

This argument identifies no error in the ALJ's decision. An ALJ must analyze the applicable Grid rules at Step Five of the sequential evaluation process only if he finds at Step Four that a claimant cannot perform past relevant work. *See Gaffron v. Astrue*, 859 F. Supp. 2d 948, 960 (N.D. Ill. 2012). In this case, the ALJ ended his analysis at Step Four because he found

---

[8] In his testimony before the ALJ, the ME cited the exact record location of the report. R. 70–71. The Court also notes that the July 19, 2006 post-surgery report (R. 698) exists in the record within four pages of Dr. Salehi's January 26, 2006 pre-surgery report (R. 694).

that, given Claimant's impairments, she could perform her past relevant work as an accounting clerk during the relevant timeframe. R. 32. As discussed above, Plaintiff identifies no error in the ALJ's Step Four determination, and he otherwise points to no error in the ALJ's RFC determination. Therefore, because the ALJ appropriately found that Claimant could perform past relevant work at Step Four, the ALJ did not err by neglecting to analyze any applicable Grid rules at Step Five. Additionally, the Grid rules do not create a lesser standard of disability. They are simply another step in the sequential evaluation process after the ALJ finds a claimant cannot perform past relevant work.

Realizing his misreading of the record, Plaintiff next attempts to raise a different Step Four argument regarding Claimant's left hand in his reply brief. Dkt. 20 at 3, 4 n. 1, 6. Plaintiff points out that the ALJ erroneously concluded that Claimant's left hand improved after the March 2006 surgery by relying on Dr. Smith's July 19, 2006 report that "[h]er extensor digiti minimi is working well so she has made quite a bit of progress." R. 26, 698. The ALJ also relied on the ME's opinion that "if [Claimant's] extensor was working well, she would not have had claw hand, as she testified, because there would be little to no extension of the fingers with a claw hand condition." R. 26. Plaintiff argues that this reasoning is flawed because the "extensor digiti minimi" is a muscle in the forearm, not the extensor finger. Dkt. 20 at 5. According to Plaintiff, the ALJ thus misread the record evidence referring to the extensor digiti minimi, and the ALJ did not appropriately address the physical therapy evidence of Claimant's "claw" left hand. Therefore, Plaintiff argues the ALJ failed to build a logical bridge to his conclusion that Claimant's left hand worked well enough to perform her past relevant work. *Id*. at 6.

These arguments are unpersuasive. To begin, Plaintiff raises them for the first time in a reply brief, thus he has forfeited them. *Vincent A. v. Berryhill*, 16 C 7136, 2019 U.S. Dist. LEXIS

7

80484, at *13 (N.D. Il. May 13, 2019) (citing *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009)). In any event, they are meritless. First, the ALJ and the ME did not misread or mischaracterize the treatment notes indicating Claimant's extensor digiti minimi was working well. The extensor digiti minimi is defined as a "[muscle] of posterior (extensor) compartment of forearm; *origin*, lateral epicondyle of humerus . . . **action, extends little finger** . . . ." STEDMAN'S MEDICAL DICTIONARY 1242 (28th ed. 2006) (bold emphasis added). One synonym listed for the extensor digiti minimi is "extensor [muscle] of little finger." *Id*. Therefore, though the extensor digiti minimi is indeed a muscle in the forearm, the muscle by definition functions to extend the fifth finger of the hand, making the ALJ's conclusion that Claimant's fifth finger was working well post-surgery an accurate description of Dr. Smith's July 19, 2006 post-surgery report and the ME's opinion, as both indicate that Claimant's extensor digiti minimi was working well post-surgery. *See* R. 26, 70–71, 698.

Second, the ALJ appropriately addressed the physical therapy evidence of Claimant's "claw" left-hand impairment. The transcript of the hearing before the ALJ reveals that the ALJ questioned the ME about the physical therapy notes identified by Plaintiff. R. 73–75. The ALJ also quoted the final therapy note from September 11, 2006, that said "the patient exhibits increased functional mobility with her left hand and at this time there is no significant change in her grip strength" while questioning the ME. R. 74, 359. In his decision, the ALJ gave "great weight" to the ME's opinion that, after reviewing the physical therapy notes and other medical evidence, Claimant's fingers should only be limited to "frequent" use. R.26–29, 70–72, 74, 76–77. He also explained and adopted the ME's observation that the same physical therapy notes showed Claimant's left-wrist extension had improved from 2/5 at the first visit on May 8, 2006, to 5/5 by the last visit on September 11, 2006. R. 27. Despite the physical therapy notes

8

indicating some weakness and extension difficulty in the third and fourth fingers in Claimant's left hand, the ALJ adopted the ME's reasoning that because the physical therapy notes otherwise showed, among other functional improvements in her left hand, Claimant's extensor had improved since her first physical therapy visit and was working well, she would not have had a "claw" hand "because there would be little to no extension of the fingers with a claw hand condition." R. 26.

Thus, contrary to Plaintiff's assertions, the ALJ and ME were aware of and appropriately addressed these physical therapy notes. R. 26–27. Plaintiff does not otherwise attempt to challenge the weight given to the ME's opinion, point to any medical opinion or other evidence in the record to contradict the ME's opinion, and neither the ME nor the ALJ mischaracterized the summary assessments provided by the physical therapist notes or other post-surgery reports as described above. Plaintiff identifies no Step Four error warranting remand in any of these newly raised arguments.

## IV. CONCLUSION

For these reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

Date: July 31, 2019

_____
Magistrate Judge Iain D. Johnston